IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMAL A. ZATARAH, AHMED YOUSEF FAWAKHIRI and MEADOWVIEW MARKET, 7591 24TH Street, Sacramento, CA 95822-5614 by Attorney Henry L. Klein, 201 St. Charles Avenue, Suite 2501, New Orleans LA 70170, DC BAR LA0003,<br><br>*Plaintiffs*<br>versus<br><br>THE UNITED STATES OF AMERICA and THE HONORABLE THOMAS J. VILSACK, in his official capacity as THE SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, 1400 Independence Avenue S.W., Washington, DC 20250,<br><br>*Defendants* | CIVIL ACTION<br><br><br>*DE NOVO REVIEW*<br><br>and<br><br>*CONSTITUTIONAL CHALLENGE*<br>*"AS APPLIED"* |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT REGARDING THE CONSTITUTIONALITY OF SNAP REGULATIONS "...AS APPLIED... " TO ALLEGED TRAFFICKING VIOLATIONS, VACATUR OF UNSIGNED FINAL AGENCY DECISION AND RESTORATION OF EBT AVAILABLITY**

The Original Complaint of Amal A. Zatarah, Ahmed Yousef Fawakhiri and Meadowview Market, located at 7591 24th Street, Sacramento, California 95822-5614 (collectively "MEADOWVIEW"), with respect represents:

**I.   PARTIES PLAINTIFF**

1.   Individual plaintiffs Amal A. Zatarah and Ahmed Yousef Fawakhiri are citizens of the United States of America, thereby entitled to all rights and privileges protected

1

by the 1st, 5th and 14th Amendments to the United States Constitution and the Due Process and Equal Protection Clauses thereof.

2. Plaintiff Fawakhiri is the owner of MEADOWVIEW and has been falsely accused by the United States Department of Agriculture ("USDA") and the Food and Nutrition Service ("FNS") of "...trafficking...", a term commonly used in connection with narcotic sales, violations against women and children, human enslavement and other heinous practices, Black's Law Dictionary, www.polarisproject.org/Trafficking/UnitedStates.

3. All plaintiffs appear for purposes of (i) restoring MEADOWVIEW as an authorized retailer of benefits in the USDA's Supplemental Nutrition Assistance Program ("SNAP"), successor to Food Stamps, and (ii) obtaining a declaration that the trafficking regulations utilized herein are "...unconstitutional as applied...", (iii) triggering supplemental relief.

4. At the outset, however, MEADOWVIEW request that the Court order *vacatur* of the USDA's Final Agency Decision ("FAD") on the grounds that it was not signed, a requirement that triggers time constraints and constitutes an *indicia* of authority.

5. As a second threshold matter, MEADOWVIEW seeks a declaration that the failure to give notice *directly* to the accused entity and its owners impairs the rights of the aggrieved parties.

## II. PARTIES DEFENDANT

6. The United States of America is named as a compulsory defendant pursuant to 7 C.F.R. § 279.7; out of an overabundance of caution, the Honorable Thomas J. Vilsack, the Secretary of Agriculture ("Secretary Vilsack") is also included as a party with an interest in the event the "...trafficking..." accusations by the USDA are deemed "...unconstitutional as applied..." a limited attack not intended to impact the entire SNAP program.

7.     Secretary Vilsack is also included in the event the "...trafficking..." accusations by the USDA are deemed arbitrary and capricious, eliminating the "basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" *Weyerhaeuser Company v. United States Fish and Wildlife Service* 586 U. S. ___ (2018).

8.     Secretary Vilsack is also included in the event the "...trafficking..." accusations by the USDA and the acts and/or omissions of USDA Administrative Review Officers ("AROs") are so unreasonable and outrageous as to constitute 42 U.S.C. 1983 and *Bivens* violations, given that trafficking charges begin with actions by state officials.

9.     The USDA is a Department of the Executive Branch responsible for developing and executing federal laws relating to farming, forestry and food; approximately 65% of the USDA's multi-billion budget goes to the Food and Nutrition Service ("FNS") whose largest component is the SNAP program, considered "...the cornerstone of USDA Nutrition Assistance..." https://www.fns.usda.gov/history-fns.

### III.   VIOLATION OF USDA MISSION STATEMENT

10.    The *permanent* disqualification of MEADOWVIEW hurts individuals who need nutritional assistance the most, violating USDA's mission statement:

> "Food, Nutrition, and Consumer Services works to harness the Nation's agricultural abundance to reduce food insecurity and improve nutrition security in the United States. Its operating agency, the Food and Nutrition Service, administers federal domestic nutrition assistance programs and includes the Center for Nutrition Policy and Promotion, which links scientific research to the nutrition needs of consumers through science-based dietary guidance, nutrition policy coordination, and nutrition education.

11.    MEADOWVIEW avers that the failure of the Administrative Review Officer ("ARO") to sign the FAD fosters carelessness and diminishes any sense of responsibility.

## IV. JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that the facts set forth herein raise due process, equal protection and other federal questions.

14. This Court also has jurisdiction to review the unsigned FAD pursuant to Title 7, United States Code, Section 2023(a)(13) and 7 CFR 279.7(a), providing for judicial review of the USDA's FAD by filing the complaint herein.

15. This Court also has ancillary and/or supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the claims of arbitrary and capricious regulatory power are so related to the claims in which this Court has original jurisdiction that "...they form part of the same case or controversy under Article III of the United States Constitution..."

16. Venue is proper in the District of Columbia, where the defendants have their principal place of business and where the challenged decisions were made.

## V. ARTICLE II APPOINTMENTS CLAUSE CHALLENGE

17. The gravamen of this action is constitutional in nature and this action attacks the meaningless analyses by USDA AROs who have no adjudicative rights pursuant to the Appointments Clause of the United States Constitution, Article II, Section 2, Clause 2.

18. The right to Article III adjudications is contained at Article II, Section 2, Clause 2:

> "[The President] shall have Power, by and with the Advice and Consent of the Senate. . . . to appoint Judges of the Supreme Court and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

4

19. The Final Agency Decision ("FAD") handed down on January 18, 2022 took place *without* a hearing, *without* regard for due process principles, *without* the admission of any evidence, *without* naming accusers or witnesses and *without* a scintilla of evidence that anyone at MEADOWVIEW engaged in the calumnious practice of trafficking.

20. MEADOWVIEW avers that the "Standard of Review" set forth in the January 18, 2022 FAD is "...unconstitutional as applied..." for compelling issues set forth below.

21. By any measure, MEADOWVIEW avers that burden placed upon the store owner is unconstitutionally vague and ambiguous, *Keyishian v. Board of Regents*, 385 U.S. 589 (1967).

22. The court in *Redmond v. United States*, 507 F.2d 1007 (5th Cir. 1975), has charitably called the regulation an "...ineptly-worded statute...."

23. In *Weyerhaeuser v. United States Fish & Wildlife*, 586 U.S. ____ (2018), the Supreme Court ruled that agencies of the Executive Branch must (i) engage in *careful* analysis, (ii) consider agency-actions' impact on *private* rights, and (iii) give *plausible* explanations for its decisions, none of which occurred in the case at bar.

## VI.   CHRONOLOGY AND UNCONSTITUTIONAL THREATS

24. MEADOWVIEW and its owners have been in the business since 1984 as a qualified retailer since 1984, never violating any regulations.

25. On a date unknown, MEADOWVIEW's store received an impromptu visit from a state contractor pretending to conduct a post-qualification examination of the MEADOWVIEW store, taking pictures, making measurements and gathering information which later turned out to be a basis for disqualification.

26. MEADOWVIEW received no warning that the impromptu visitor was looking for incriminating evidence to use in the administrative disqualification at bar.

27. On August 19, 2021, MEADOWVIEW received a "Charge Letter" declaring that the USDA Food and Nutrition Service had reached the following determination without MEADOWVIEW's knowledge or input:

> "Analysis of [MEADOWVIEW]' records, including a review of your store's characteristics, food stock, and store pricing gathered from visit(s) to the store, reveal Electronic Transfer Transfer (EBT) transactions _that establish clear and repetitive patterns of unusual, irregular and inexplicable activity for your type of firm_."

28. The letter concluded by serial *ipse dixit* statements that MEADOWVIEW was guilty without advance notice or a trial, portending the following consequences:

> "[y]our store *will be permanently disqualified from the Supplemental Nutrition Assistance Program as provided by SNAP regulations. Civil or criminal action may also be taken against you by the United States Attorney. In addition, a fiscal claim may be assessed to recover the monetary losses to the Federal Government resulting from trafficking violations.*

29. Further intimidating threats to MEADOWVIEW's property rights were included in the Charge Letter — **the first notice to MEADOWVIEW** — as follows:

> "_In the event you sell or transfer of your store subsequent to your disqualification_, you will be subject to and liable for a civil money penalty (CMP) as provided by SNAP regulations. . . . we may disclose information to the public when a retailer has been disqualified or sanctioned for violations after the time for any appeals has expired."

6

## VII.   UNCONSTITUTIONAL TIME CONSTRAINTS AND "...DEFENDING IN THE BLIND..."

30.   Unlike the Federal Rules of Civil Procedure, the time constraints within which MEADOWVIEW was required to act where unconstitutionally short, unreasonably harsh and impossible to adequately or effectively meet:

> "*If you wish to present any information, explanation, or evidence you have regarding these charges, you must reply within 10 calendar days of the date you receive this letter*.  You may reply either by phone or in writing. . . .To respond by phone, please make an appointment for this purpose by telephoning [random name] at (224) 284-1005.  **If you schedule but fail to keep an appointment, we will consider that action as a non-response to this letter**.

31.   Calls for "...an appointment..." were typically  —  if not always  —  met with a voice message and a promise to receive a return call *never* made, beckoning finality:

> "....*if we do not hear from you within 10 calendar days of receipt of this letter, we will make a decision based on the information available to us, and advise you of that decision in writing*."

32.   The "...information available to us..." was what USDA gathered in six (6) months of *stealth* investigation of MEADOWVIEW  —  November 2020 to April 2021.

33.   The information as to MEADOWVIEW was held under advisement or in abeyance from April 2021 until August 2021, giving the USDA 10 months to build a case against MEADOWVIEW's 10 days to defend itself.

## VIII.   TWO-WORD OXYMORON:<br>"...GUILTY UNTIL PROVEN INNOCENT..."

34.   The unsigned FAD was a premeditated finding that MEADOWVIEW was

### "...GUILTY UNTIL PROVEN INNOCENT..."

7

35. The routine and premeditated declarations by USDA AROs that all **"...explanations are inexplicable..."** is constitutionally *disqualifying* and an undeniable admission that a store owner will not receive a fair trial before a fair tribunal, particularly when the roles of investigator, prosecutor, judge, jury and sentencing adjudicator are combined in one person — ARO Rich Proulx.

### IX. LUCIA AND BANDIMERE

36. In <u>Ryder v. United States</u>, 515 U.S. 177 (1995), the United States Supreme Court held:

> "We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments."

37. Accordingly, MEADOWVIEW hereby challenges the validity of the FAD issued by ARO Rich Proulx and requests Declaratory Judgment at the outset of this judicial review of the administrative action taken by USDA.

38. Because the Administrative Record ("AR") has not been provided, MEADOWVIEW reserves the right to determine on the AR what ARO Proulx really is: an officer of the United States or an employee of an agency of the government?

39. In <u>Lucia v. SEC</u>, 585 U.S. ___, (2018), by a 7-2 opinion, the Court remanded the case, holding that administrative law judges of the Securities and Exchange Commission were "...officers of the United States..." subject to the Constitution's Appointments Clause.

40. Equally important to a determination of ARO Proulx's role under the Administrative Procedures Act is <u>Bandimere v. SEC</u>, 844 F. 3rd 1168 (10th Cir. 2016).

41.  The dissent in *Bandimere* by Circuit Judges LUCERO and MORITZ makes a point well-worth factual development by this Court in *this* case, at page 2:

> Many complaints were voiced against the actions of the hearing examiners, it being charged that they were mere tools of the agency concerned and subservient to agency heads in making their proposed findings of fact and recommendations.

42.  The following statement says it best, speaking of AROs:

> [ALJ]s are vested with duties of administration and at the same time they are given important judicial work. The evils resulting from this confusion of principles are insidious and far-reaching. Pressures and influences properly enough directed toward officers responsible for formulating and administering policy constitute an unwholesome atmosphere in which to adjudicate private rights. But the mixed duties of the commissions render escape from these subversive influences impossible. Furthermore, the same men are obliged to serve both as prosecutors and as judges. This not only undermines judicial fairness; it weakens public confidence in that fairness. Commission decisions affecting private rights and conduct lie under the suspicion of being rationalizations of the preliminary findings with the Commission, in the role of prosecutor, presented to itself"

43.  MEADOWVIEW's objection to combining investigative and adjudicative functions in the same person was well-supported by *Withrow v. Larkin*, *supra*:

> "[a] 'fair trial in a fair tribunal is a basic requirement of due process', *In re Murchison*. **This applies to administrative agencies which adjudicate as well as to courts, *Gibson v. Berryhill*.** The contention that the combination of investigative and adjudicative functions creates an unconstitutional risk of bias in administrative adjudication....and it must convince that, under a realistic appraisal of psychological tendencies and human

weakness, conferring investigative and adjudicative powers on the same individual poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."

### X. INFIRM STANDARD OF REVIEW

44.    In the FAD sent to MEADOWVIEW, the burden is *impossible* to understand:

**STANDARD OF REVIEW**

**In an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.**

45.    In *Keyishian*, *supra*, the Supreme Court gave ample guidance at 604:

"[When] a regulatory maze is wholly lacking in 'terms susceptible of objective measurement, it has the quality of 'extraordinary ambiguity' found to be fatal [] in Cramp and *Baggett v. Bullitt*. '[M]en of common intelligence must necessarily guess at its meaning and differ as to its application. Vagueness of wording is aggravated by prolixity and profusion of statutes, regulations and administrative machinery...'"

46.    The regulatory maze *sub judice* forces MEADOWVIEW to bear an unbearable burden.    Moreover, the test is **validity**, *vel non*, *Redmond v. United States*, 507 F.2d 1007 (5th Cir. 1975):

❑    "Under 7 U.S.C.A. § 2022, a district court review shall be a trial *de novo* in which the court shall determine the **validity** of the questioned administrative action in issue...", (at 1008).

- ❑ "...under 7 U.S.C.A. § 2022, the aggrieved food store has the burden of establishing the **invalidity** of the administrative action..." (at 1008).

- ❑ "The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the **validity** of the questioned administrative action in issue..." (*Redmond*, at footnote 2).

47. At page 1011, the 5th Circuit made the following observation:

"The language [about validity, *vel non*] is uncommon in federal statutes providing for judicial review of administrative decisions, and hence there is little authority to guide the determination as to just what is supposed to happen in the district court....**it is an ineptly-worded statute**..."

48. By any measure, the FAD at issue was handed down by an "...appointee exercising significant authority pursuant to the laws of the United States...", *Buckley v. Valeo*, 424 U.S. 1 (1976), cited by *Bandimere* at 1173.

49. Notwithstanding ample training by MEADOWVIEW's owners and the mountain of hearsay evidence, USDA ignored the black-and-white definition of "trafficking" and falsely accused MEADOWVIEW based on an unreliable statistical process called "ALERT":

**(1)** buying, selling, stealing or exchanging SNAP Benefits;

**(2)** exchanging SNAP Benefits for firearms, ammunition, explosives or controlled substances;

**(3)** purchasing products involving return deposits with the intent to obtain cash at a later time;

**(4)** purchasing a product with the intent to sell benefits;

**(5)** intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or other consideration other than eligible

       food;

**(6)**    attempting all or some of the above with thee intent to engage in trafficking.

50.    There is not a scintilla of evidence that *anyone* at MEADOWVIEW violated the above regulation.

## XI. RELIEF REQUESTED

51.    Per 28 U.S.C. §2201, MEADOWVIEW requests declaratory judgments:

❑    that the trafficking aspects of the SNAP program are "...unconstitutional as applied...";

❑    that the trafficking accusations against MEADOWVIEW were "...arbitrary and capricious...";

❑    that the acts and/or omissions by AROs are so unreasonable and outrageous as to constitute 42 U.S.C. 1983 and *Bivens* violations, given that trafficking charges begin with actions by state officials.

52.    Should Declaratory Judgments not issue, MEADOWVIEW challenges:

❑    The Impromptu Store Inspections Used to Begin a Process to Charge Trafficking Without Warning the Store Owner;

❑    The Use of the "Alert" System as a Statistical Basis to Charge a Store with Trafficking;

❑    The Shortened 10-day Time Requirements to Respond to Charges;

❑    The Threats of Sanctions, Criminal Reprisals and Monetary Sanctions If an Owner Sells His Property;

❑    The Provision That Losses Will Not Be Reimbursed If the Owner Wins;

- ❏ The Assertion That All Explanations Are "...Inexplicable...";

- ❏ The Use of Administrative Review Officers like Rich Proulx Who Never Hold Hearings;

- ❏ The Assumption That an Owner Is "...Guilty until Proven Innocent..."

53. In due course, a reinstatement of all SNAP privileges.

54. And for all general, legal and equitable relief.

Respectfully submitted,

*/s/   Henry L. Klein*
**Henry L. Klein (DC Bar LA0003)**
201 St. Charles Avenue, Suite 2501
New Orleans, LA 70170
(504) 439-0488
henryklein44@gmail.com